412 So.2d 340 (1982)
In the matter of John L. COOKE, Individually and d/b/a J.L. Cooke Realty and Maureen E. COOKE, Bankrupt.
John L. COOKE, Plaintiff-Appellant,
v.
Sonia URANSKY, Trustee, Defendant-Appellee.
No. 60669.
Supreme Court of Florida.
March 4, 1982.
Rehearing Denied April 28, 1982.
*341 Philip L. Burnett, Fort Myers, for plaintiff-appellant.
Robert L. Donald of Pavese, Shields, Garner, Haverfield, Kluttz & Cottrell, Fort Myers, for defendant-appellee.
ALDERMAN, Justice.
The United States Circuit Court of Appeals, the former Fifth Circuit, asks by certified question whether Florida allows foreigners visiting the United States as tourists to place a residence owned in this state beyond the reach of creditors under the Florida homestead exemption. Cooke v. Uransky (In the Matter of Cooke), 643 F.2d 277 (5th Cir.1981). We answer this question in the negative and agree with the resolution of this issue by the United States District Court for the Middle District of Florida in Cooke v. Uransky (In the Matter of: John L. Cooke), Case No. 79-1190-Civ-T-GC (May 1, 1980), wherein the district court adopted the order of the bankruptcy judge.
Cooke, a Canadian citizen who was a temporary visitor in Florida merely as a tourist, filed a petition for voluntary bankruptcy on June 19, 1979, and claimed a Fort Myers' residence as his homestead, exempt from claims of creditors pursuant to article X, section 4 of the Constitution of Florida. The trustee in bankruptcy filed her report of exempt property and disallowed the homestead exemption claim, and Cooke subsequently filed an objection to the trustee's report. The bankruptcy judge agreed with the trustee's report and determined that Cooke was a citizen of Canada, was not registered as a resident alien pursuant to the provisions of the United States Code governing the status of aliens, and did not have a permanent visa but was in the United States as a tourist. The bankruptcy judge explained that while it is no longer necessary that the head of the family reside in Florida, the bankrupt is still required to establish that he intended to make the property which he claims as homestead his or his family's permanent place of residence. Relying on the rationale of our decision in Juarrero v. McNayr, 157 So.2d 79 (Fla. 1963), the bankruptcy judge concluded that Cooke was incapable of declaring a Florida home as his permanent residence unless his legal status changed, and therefore he could not avail himself of the homestead benefits under article X, section 4 of the Florida Constitution. In the Matter of Cooke, 1 B.R. 537 (Bkrtcy.N.D.Fla. 1979).
Cooke argues that this constitutional provision relating to homestead exemption contains no prerequisite that there be an intent to make the property in question his or his family's place of residence. He maintains that the 1968 amendment to the homestead provision, eliminating the requirement that the head of the family reside in this state, also abrogated any requisite that there be an intention to make the property his or his family's permanent residence.
We reject this contention, and we hold that although it is not necessary that the head of the family reside in the state or intend to make the property in question his permanent residence, he must establish that he intended to make this property his family's permanent residence.
Article X, section 4, Constitution of Florida (1968), provides for exemption of a homestead owned by the head of a family and states:
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of *342 taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by the head of a family:
(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family;
... .
Article X, section 1, Constitution of Florida (1885), provided for the exemption of homestead owned by a head of a family residing in this state and stated:
SECTION 1. Exemption of homestead; extent.  A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists... .
The 1885 constitution was consistently construed to impose two separate and distinct requirements before the head of the family owning the property may qualify for homestead exemption. One requirement was that he must intend to make the property his family's permanent residence, and the other was that he must reside in this state. See, e.g., In re Estate of Van Meter, 214 So.2d 639, 643 (Fla. 2d DCA 1968), approved, 231 So.2d 524 (Fla. 1970).
The actual characterization of property as homestead depends upon the intention of the head of the family to make the property his family's permanent residence. Hillsborough Inv. Co. v. Wilcox, 152 Fla. 889, 13 So.2d 448 (1943); Lanier v. Lanier, 95 Fla. 522, 116 So. 867 (1928). The requirement that the head of the family reside in this state, however, did not go to the characterization of the property as homestead and was not an integral part of the concept of homestead as was the requirement of intent, but rather it went to eligibility of the head of the family to claim this exemption. Elimination of this latter requirement in no way derogated the character and concept of homestead and therefore did not eliminate the requirement that the head of the family intend to make the property his family's permanent residence in order for him to avail himself of the homestead benefits under article X, section 4.
We next address the question of whether Cooke, a foreigner visiting the United States as a tourist, could legally formulate the requisite intent. The bankruptcy judge explained Cooke's status under federal law as follows:
Canadian citizens are not required to obtain a visa in order to enter the United States as visitors, but they must have a permanent visa if they intend to reside in this country indefinitely and must register just like other aliens as a resident alien and be in possession of an alien registration receipt card at all times. Title 8 U.S.C. Sec. 1304; 8 C.F.R. Secs. 211.1, 212.1 and 245 (1979).
From all this it follows that a tourist who does not hold a permanent visa cannot be a permanent resident of this state and regardless of what his intent is to do in the future, he is incapable of declaring a home in this state as his permanent residence unless his legal status is changed. As the bankrupt is not registered as a resident alien, does not have a permanent visa, but is in this country merely as a tourist, he does not have the ability to declare the property in question as his permanent residence and therefore cannot avail himself of the homestead *343 benefits under Article X, Sec. 4 of the Constitution of Florida.
In the Matter of Cooke, 1 B.R. at 539.
We agree with this conclusion of the bankruptcy judge under the particular circumstances of this case,[1] and we find our following rationale in Juarrero v. McNayr to be pertinent. There, we said:
Citizenship is not a prerequisite for claiming homestead exemption. See Smith, Tax Assessor et al. v. Voight, 158 Fla. 366, 28 So.2d 426. Appellants have made every requirement for the exemption claimed within their power, and thus the question arises as a matter of law as to whether or not, under the circumstances mentioned, they possess the legal power to rightfully and in good faith make the subject property their "permanent home." We must adopt the view of the Chancellor that they cannot legally intend to do that which by law and the temporary nature of their visas they are prohibited from doing.
It is true that a resident of another state in this country may abandon residence in that state, come to Florida, purchase a home, reside in it, and declare it to be his permanent residence and become entitled to the homestead exemption provided by Section 7, Article X of our Constitution. Such person must make such declaration "rightfully" and in "good faith." This might also be true in the case of one from another country, who is in this country with a permanent visa. Such persons have the freedom and right with certainty to make and declare a bona fide intention of permanent residence in the home owned and located in this state. This is not so, however, in the case of a citizen and former resident of a foreign country who is here under the authority of nothing more than a temporary visa, because such person has no assurance that he can continue to reside in good faith for any fixed period of time in this country. Consequently, we hold he cannot "legally," "rightfully" or in "good faith" make or declare an intention which he has no assurance he can fulfill or carry out because of the temporary nature of the visa. In other words, he does not have the legal ability to determine for himself his future status and does not have the ability legally to convert a temporary residence into a permanent home.
157 So.2d at 81.
Based upon the facts of this case, in response to the certified question, we state that Cooke may not place the residence owned by him in this state beyond the reach of creditors under the Florida homestead exemption because, at the time he petitioned for bankruptcy, he could not legally formulate the requisite intent to make that residence his family's permanent place of residence.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD and McDONALD, JJ., concur.
OVERTON, J., dissents.
NOTES
[1] It appears that Mr. Cooke and his family were Canadian citizens temporarily in the United States as tourists and that none of them had the legal right to reside permanently in Florida. This being the case, Mr. Cooke could not legally formulate the requisite intent to make the Florida property his family's permanent place of residence.