929 So.2d 1165 (2006)
Christian G. WEBER, Petitioner,
v.
Nataliya WEBER, Respondent.
No. 2D05-4162.
District Court of Appeal of Florida, Second District.
June 2, 2006.
Rehearing Denied June 2, 2006.
*1166 Robert L. Donald of Law Office of Robert L. Donald, Fort Myers; and Sonja K. Burkard of Burkard Law Firm, P.A., Fort Myers, for Petitioner.
Paul Morris of Law Offices of Paul Morris, P.A., Miami, for Respondent.
ALTENBERND, Judge.
Christian G. Weber (the husband) seeks a writ of prohibition or a writ of certiorari, challenging a circuit court's order that it has subject matter jurisdiction to proceed with a dissolution of marriage action filed by Nataliya Weber (the wife). The husband argues that the circuit court lacks subject matter jurisdiction over this divorce because the wife's status as a nonimmigrant alien[1] prohibits her from claiming that Florida was her "residence" for the six months preceding the date she filed her petition for dissolution of marriage, as required by section 61.021, Florida Statutes (2004). We deny the petition. See Nicolas v. Nicolas, 444 So.2d 1118 (Fla. 3d DCA 1984); Perez v. Perez, 164 So.2d 561 (Fla. 3d DCA 1964).
The husband is a citizen of Germany who currently holds a "nonimmigrant visa" and resides in the United States. The wife is a citizen of the Ukraine and likewise resides in Florida on a "nonimmigrant visa." Before coming to the United States in 1998, the wife had resided in Germany since 1994.
The couple moved to Florida in December 1998. They obtained a marriage license and were married here in 1999. That same year, their daughter was born in Florida. She is, thus, both a United States citizen and a lifelong resident of Florida. The wife filed her petition for dissolution of marriage in a Florida circuit court in August 2004.
At the evidentiary hearing on subject matter jurisdiction, the wife testified that both she and the husband have Florida driver's licenses and bank accounts. She indicated she has been a continuous resident of Florida since December 1998, and she presented evidence that she has been enrolled as a student in a nursing program at a community college in Florida since 1999. She also presented evidence from a babysitter who regularly provided child care for the parties' child since 1999. The wife testified that she intends to reside in Florida permanently, at least as long as she is permitted to do so by the United States government.
The only evidence that seems to conflict with the wife's testimony is the fact that she applied for "permanent residence" in Germany in 2004, a few months before she filed the petition for dissolution of marriage. However, the wife explained that she had sought dual citizenship with Ukraine and Germany because German *1167 citizenship would make it easier for her to travel internationally.
Based upon this evidence, the trial court ruled that that the wife was a resident of Florida pursuant to section 61.021, and thus, the court had subject matter jurisdiction over this dissolution proceeding. There is, of course, no dispute that the court has personal jurisdiction over the parties. The husband challenges the finding of subject matter jurisdiction in this original proceeding.
Section 61.021 states: "Residence requirements.  To obtain a dissolution of marriage, one of the parties to the marriage must reside 6 months in the state before the filing of the petition." Residency under section 61.021 means an actual presence in Florida coupled with an intention at that time to make Florida the residence. Rowland v. Rowland, 868 So.2d 608, 610 (Fla. 2d DCA 2004) (citing Copas v. Copas, 687 So.2d 885, 887 (Fla. 2d DCA 1997)). A continuous presence during the entire six-month period before filing the petition is not required. Rowland, 868 So.2d at 611.
Generally, whether a party is a resident within the meaning of section 61.021 is both a question of law and fact to be settled or determined from the facts of each particular case. Fowler v. Fowler, 156 Fla. 316, 22 So.2d 817, 819 (1945). Here, however, the husband argues that if a person is a nonimmigrant alien whose presence in this country is permitted based upon the understanding that it will not be permanent, that person cannot, as a matter of law, establish that he or she is a Florida resident because he or she cannot "legally" intend to remain in this state. Although the Third District in Nicolas, 444 So.2d 1118, and Perez, 164 So.2d 561, has rejected this argument, the Florida Supreme Court and this district have not previously spoken to this specific issue.
There is one Florida Supreme Court case addressing whether "citizenship" is a prerequisite for "residency" under the dissolution of marriage statutes. In Pawley v. Pawley, 46 So.2d 464 (Fla.1950), receded from on other grounds in Davis v. Dieujuste, 496 So.2d 806 (Fla.1986), the Florida Supreme Court stated:
"Our statute, 65.02, Florida Statutes 1941, F.S.A., reads, "In order to obtain a divorce the complainant must have resided ninety days in the State of Florida before the filing of the bill of complaint." (Italics supplied.) It is obvious that the word resided could not properly be construed to encompass citizenship in a legal sense because one may come to this State, establish a bona fide residence of ninety days, thereafter institute a divorce action and have it heard and conclusively adjudicated on its merits before he could under the law become a citizen and enjoy all the privileges of citizenship. On the other hand, a person might reside in Florida many years and never become a citizen of this State or renounce his citizenship in a foreign jurisdiction. Indeed, failure to renounce pre-existing citizenship is nothing more than a circumstance to be considered in connection with the question of the bona fides of the plaintiff's residence which is the real test under our statutory law.... Citizenship is not a statutory jurisdictional prerequisite for divorce and neither of the words `citizen' or `citizenship' can be read into our statute."
Id. at 471 (citation omitted). The opinion in Pawley, however, does not disclose under what conditions the wife in that case entered the United States; that is, whether she had an immigrant status which contemplated permanency or a nonimmigrant status which anticipated a temporary stay. Thus, Pawley does not conclusively resolve *1168 whether nonimmigrant status will prevent an alien from establishing residency for the purpose of filing an action for dissolution of marriage.
The husband argues that this specific issue is resolved by the supreme court's reasoning in two subsequent cases: Cooke v. Uransky, 412 So.2d 340 (Fla.1982), and Juarrero v. McNayr, 157 So.2d 79 (Fla. 1963).[2] In these two cases, the Florida Supreme Court held that a nonimmigrant alien was not entitled to the constitutional homestead exemption from taxes and attachment by creditors. We conclude, as did the Third District in Nicolas and Perez, that Cooke and Juarrero are distinguishable and based upon considerations not present here. Like the Third District, we conclude that a person's nonimmigrant status does not bar his or her ability to establish residency under section 61.021, although that status may be a factor in determining whether the person has a bona fide intent to remain in the state indefinitely.
In 1963, the Florida Supreme Court decided Juarrero. The case involved Cuban refugees, holders of nonimmigrant visas who had permission to stay indefinitely in the country and who sought to claim entitlement to the homestead property tax exemption. At the time, article X, section 7, of the Florida Constitution permitted such an exemption for "[e]very person who has the legal title ... to real property ... and in good faith makes the same his or her permanent home." Relying on the constitutional language, the supreme court held that the nonimmigrant aliens could not claim their residences as their "permanent homes" because they could not "legally intend to do that which by law and the temporary nature of their visas they are prohibited from doing." Id. at 81.
In Cooke, 412 So.2d 340, the supreme court came to a similar conclusion in a case in which Canadian citizens, who were permitted to enter the United States on a temporary basis without obtaining a visa, sought to declare their Florida residence as their homestead and thus exempt from creditors' claims in a bankruptcy proceeding. Although the court acknowledged that the constitutional homestead provision had been amended and no longer used the term "permanent home," the court nevertheless concluded that the amendment "did not eliminate the requirement that the head of the family intend to make the property his family's permanent residence." Id. at 342. Thus, the court concluded that the "Canadian tourists" could not claim their residence as homestead in order to exempt it from the claims of creditors.
Despite this precedent, however, the Third District has concluded that a nonimmigrant alien whose status is based upon an understanding that he or she will not remain in the country permanently is not prohibited as a matter of law from establishing that he or she was a resident of Florida for six months in order to file a petition for dissolution of marriage. In Perez, 164 So.2d 561, decided one year after the supreme court's decision in Juarrero, the Third District held that a Cuban refugee, intending to remain in the United States for an indefinite period, could establish that he had been a resident of Florida for the six months required by then section 65.02, Florida Statutes (1961), in order to file a petition for dissolution of marriage. Perez, 164 So.2d at 564. The Third District distinguished Juarrero, explaining that Juarrero "turned on the feature that the constitutional provision for the homestead exemption required the applicant to have a permanent home, and the *1169 court quite correctly held that a Cuban refugee, here for an indefinite period, but not on a permanent visa, could not be said to have a permanent home here." Perez, 164 So.2d at 564. The court added:
However, in administering the laws of the State of Florida with reference to divorce, courts should advert to the principle that the state is a party in interest in all divorce suits and that the public welfare and morals are necessarily involved.
Id.
The Third District reaffirmed the holding of Perez in Nicolas, 444 So.2d 1118. Citing Pawley, the court concluded:
Plainly, then, an alien's foreign citizenship or non-permanent immigration status in this country does not constitute in itself an absolute residency bar to the maintenance of a marriage dissolution action by the alien in the Florida courts, although these factors are certainly evidentiary on the issue of domiciliary intent....
444 So.2d at 1120. The Third District added, "This conclusion is in accord with the overwhelming weight of authority on this subject throughout the country." Id.; see also Emile F. Short, Annotation, What Constitutes Residence or Domicil Within State By Citizen of Another Country for Purpose of Jurisdiction in Divorce, 51 A.L.R.3d 223 (1973).
Like the Third District, we conclude that the wife's nonimmigrant status does not preclude her, as a matter of law, from establishing residency in Florida under section 61.021. The holdings of Juarrero and Cooke, both of which result from the wording of the constitutional provisions regarding homestead, do not apply in this context. Certainly prohibiting a nonimmigrant from claiming a tax exemption or an exemption from creditors' claims raises significantly different policy issues than preventing a nonimmigrant who is legally in the state and hopes to remain from seeking a dissolution of marriage here.
There is no question in this case that the circuit court has personal jurisdiction over the parties and over their minor child who was born in this state and is a United States citizen. A Florida court has a significant interest in the impact of this dissolution on this child and any decisions that might be made regarding his or her custody and support.
The wife presented competent, substantial evidence to support the trial court's finding that she resided in the state of Florida for the requisite six-month period and that she had a bona fide intent to remain in Florida indefinitely. As a result, we deny the petition for writ of prohibition or writ of certiorari because we conclude the circuit court had subject matter jurisdiction over this dissolution of marriage action.
Petition for writ of prohibition or writ of certiorari denied.
CASANUEVA and VILLANTI, JJ., Concur.
NOTES
[1] See 8 U.S.C. § 1184.
[2] See also DeQuervain v. Desguin, 927 So.2d 232 (Fla. 2d DCA 2006).